IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN JORDAN,<br>    Plaintiff | :<br>: |
| v. | : CIVIL NO. 1:09-CV-2394<br>:<br>: (Judge Caldwell) |
| JEFFREY A. BEARD, *et al.*,<br>    Defendants | :<br>:<br>: |

*M E M O R A N D U M*

I. *Introduction*

The pro se plaintiff, Shawn Jordan, is an inmate at SCI-Rockview, serving an unknown period of incarceration on a conviction unspecified in his pleadings.[1] He filed this civil-rights action challenging his expulsion on two occasions from the sex offender treatment program ("SOTP" or "program") at Rockview. He makes the following claims. First, the defendants retaliated against him by removing him from the program for exercising his First Amendment rights to free speech and to association. Second, his removal from the program violated substantive and procedural due process, the latter claim based on the mandatory nature of his participation in the SOTP before he can be eligible for parole. He also makes state-law claims invoking the substantively similar protections of the Pennsylvania Constitution.

---

[1] Plaintiff filed a habeas petition under 28 U.S.C. § 2254 challenging a denial of a parole. *Jordan v. State Police*, No. 04-CV-5450 (E.D. Pa.). According to the filings in that case, he pled guilty to having committed involuntary deviate sexual intercourse with a minor and the third-degree murder of the minor. According to Jordan's 2254 petition, the judgment of conviction was on December 16, 1990. According to the magistrate judge's report in the habeas action, Plaintiff was sentenced on October 15, 1990, to fifteen to forty years of imprisonment. 2005 WL 697428, at *1. The length of Plaintiff's sentence is also mentioned in an attachment to Plaintiff's Amended Complaint. (Doc. 25-2, CM/ECF p. 30).

Named as defendants are the following Pennsylvania Department of Corrections (DOC) employees: Secretary, Jeffrey A. Beard; SCI-Rockview Superintendent, Franklin Tennis; Deputy for Centralized Services, Robert Marsh; Deputy for Facilities Management, Brian Thompson; Corrections Program Manager, Melinda Smith; SOTP Director, Bethanne Burkholder; Unit Manager, Dean Gentzel; Corrections Officer (CO) Lee Phillips; and DOC's Chief Grievance Officer, Dorina Varner.

Defendants have filed a motion to dismiss, contending that the Amended Complaint fails to state a claim upon which relief may be granted. They also contend Plaintiff has failed to exhaust his administrative remedies. In addition to opposing Defendants' motion, Plaintiff has filed a Motion to Compel Discovery which requests that the court lift the stay on discovery that was imposed pending resolution of Defendants' Motion to Dismiss.

The court will grant Defendants' Motion to Dismiss except for their challenge to the procedural due process claim, but allow them another opportunity to seek dismissal of that claim. We deny Plaintiff's Motion to Compel Discovery and keep the stay in place pending the filing of another motion to dismiss.

II.  *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d

286, 291 (3d Cir. 2010)(quoted case omitted). A court may consider documents that are attached to or submitted with the complaint, *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002), and matters of public record, *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006), including court filings. *See Churchill v. Star Enterprises*, 183 F.3d 184, 190 n.5 (3d Cir. 1999)(citing *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

"Pro se complaints are 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Jackson v. Div. of Developmental Disabilities*, 394 F. App'x 950, 951 n.3 (3d Cir. 2010)(nonprecedential)(quoted case omitted). Nonetheless, the complaint still "must contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoted case omitted). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). However, leave to amend need not be granted if amendment would be futile. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

With these principles in mind, we set forth the background to this litigation.

III.  *Background*

In pertinent part, 42 Pa. Con. Stat. Ann. §9718.1 (West 2007), requires persons convicted of certain sex offenses against a minor to "attend and participate in a [DOC] program of counseling or therapy . . . ." *Id.* § 9718.1(a). That statutory section specifies that a sex offender "shall not be eligible for parole unless the offender has . . . participated in the program . . . ." *Id.* § 9718.1(b)(1)(ii). The DOC has "the sole discretion with respect to counseling or therapy program contents and administration, including the scheduling of an offender's attendance and participation." *Id.* § 9718.1(c). The provision disclaims the creation of any legal right in any individual seeking to be paroled who was required to participate. *Id.* § 9718.1(d)(3).

In November 2007, the SCI-Rockview SOTP Director, Ms. Burkholder, recommended Jordan's participation in the institution's SOTP. Doc. 25, Am Compl., CM/ECF p. 3.[2] On April 9, 2008, Jordan began participating in the program. *Id.* Soon after, Ms. Burkholder counseled Jordan "regarding his non-compliance with the program guidelines." Doc. 25-2, CM/ECF p. 13. He was "confronted with his failure to identify high risk situations and was asked to avoid inappropriate relationships." *Id*. Specifically, Jordan was cautioned about his relationship with another inmate in the program. However, Jordan "minimiz[ed] the consequences and extent of the relationship and the nature of the high-risk situation." *Id*.

---

[2]  Unless otherwise noted, all citations to the record are to the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than to the page numbers of the original documents.

Exercising their "professional opinion," treatment staff determined that Jordan's "actions and statements indicate[d] that he [was] not able to commit himself to serious sex offender treatment at [that] time." *Id*., CM/ECF p. 13. Jordan was removed from the program on May 19, 2008.[3] Doc. 25, CM/ECF p. 3.

       Jordan challenged his removal in grievance no. 230199. *Id*., CM/ECF pp. 14-15. Deputy Superintendent for Centralized Services, Robert Marsh, responded to his grievance appeal. He advised Jordan that while he and the other inmate involved were counseled "on the effect this relationship was having on [their] SOP programming," only "[t]he other inmate heeded the advice of the unit management team and avoided you." *Id*., CM/ECF p. 14. Marsh stated that Jordan "continued to pursue engaging in a relationship with this inmate that was detrimental to [his] therapeutic progress in the SOP." *Id*. Jordan appealed this decision to Superintendent Tennis. *Id*., CM/ECF p. 15. Superintendent Tennis informed Jordan that Ms. Burkholder, Mr. Gentzel and other staff and inmates in the program observed his inappropriate behavior with the inmate.

       On June 21, 2008, Jordan filed grievance no. 235649 (*Id*., CM/ECF p. 12) complaining that he was told by Ms. Burkholder and Mr. Gentzel that he would be "immediately moved back to the" SOTP in 60 days after his removal but that he had not yet been returned. He claims that Ms. Burkholder and Mr. Gentzel knew that he would have to wait six to 18 months before a single cell was available with the SOTP because he is required to be housed in a single cell, and "inmates who

---

   [3] Notably, this was the second time Jordan was removed from the SOTP for non-compliance with program requirements. Doc. 25-2, CM/ECF pp. 2 and 13.

are not single cell, will be moved into the program first." *Id*. He complained that pursuant to section 9718.1, he must complete a SOTP program to be parole eligible. He sought to learn "why [he's] being discriminated against by staff." *Id*.

Melinda Smith, the Corrections Program Manager, denied the grievance upon initial review. *Id*., CM/ECF p. 13. She restated the grounds for Jordan's removal from the SOTP and that after 90 days, not 60 days, "he would be evaluated for readmission, not immediately moved back into the sex offender program." *Id*. In his appeal to Superintendent Tennis, Jordan defines what he meant when he said that Ms. Burkholder "discriminated" against him. *Id*. at CM/ECF p. 10. He claims Ms. Burkholder "made a clear distinction when she determined with no evidence, [he] was having an inappropriate relationship with another inmate." *Id*. He claims that her actions were taken on the basis of prejudice. *Id*. Superintendent Tennis denied Jordan's appeal. *Id.*, CM/ECF p. 8. At final review, it was determined that Jordan "failed to provide any evidence that [his] rights were violated or that staff discriminated against [him] when" removing him from the SOTP. *Id*., CM/ECF p. 11.

On September 10, 2008, Jordan filed a third grievance, no. 243498, after CO Phillips told him that Ms. Burkholder was inquiring about his conduct outside of the SOTP. *Id*., CM/ECF p. 22. He asserts that if Ms. Burkholder denied him readmission to the SOTP on the basis of his association with fellow inmates, she would be violating his First Amendment rights. *Id*. He reasserts that his "removal from the program was based on false information from staff-members or

inmates who may dislike [him]". *Id*. Melinda Smith responded that Ms. Burkholder did not violate Jordan's First Amendment rights by inquiring into his activities outside of the program as she was attempting to "determine if [he] has been able to avoid high-risk situations which led to his removal from the program." *Id*. at CM/ECF p. 23. In responding to Jordan's appeal, Superintendent Tennis advised him that:

> you are free to speak to whomever you choose but that does not prohibit staff from monitoring your actions and associations and taking appropriate action accordingly. There are certain requirements of the SOP; one being to avoid high risk situations <u>as determined by SOP staff</u>.

*Id*., CM/ECF p. 18 (emphasis in original). On November 21, 2008, the appeal was denied at final review. *Id*., CM/ECF p. 19. In the response, it was noted that the reasons for his removal was addressed in a prior grievance (no. 235649) and would not be readdressed. *Id*.

In January 2009, Jordan reentered the SOTP and was "clearly told to not have any contact with this same inmate." Doc. 25, CM/ECF p. 3; Doc. 25-2, CM/ECF p. 26. On June 30, 2009, Ms. Burkholder submitted a "vote sheet" for his removal based on his association with another inmate. Doc. 25, CM/ECF p. 2. Jordan was removed from the program after "Corrections officers on the SOP have witnessed [Jordan] talking, walking, and standing with this inmate. Officers in the yard observed [Jordan] with this inmate in the yard. Ms. Burkholder and Mr. Regan report[ed] [Jordan] admitted to giving cosmetics to another inmate to pass along to the inmate with whom you are to not have any contact." Doc. 25-2, CM/ECF p. 26.

On June 27, 2009, Jordan filed a grievance regarding his recent removal from the SOTP, no. 279025. *Id*. at CM/ECF p. 31. In that grievance, he alleges that Ms. Burkholder removed him from the program because she was "prejuduce (sic) and victimizing [him] with these unjustified reasons for removing [him]." *Id*. He also contested the manner of his removal, via a vote sheet and not a misconduct, as violative of his Due Process rights. *Id*. Melinda Smith provided the first level grievance response. *Id*., CM/ECF p. 30. She noted that Jordan was removed from the program:

> primarily due to [his] inability to refrain from contact with
> another inmate - after he had been warned on numerous
> occasions not to be associating with him. Additionally,
> Mr. Jordan passed off cosmetics to another individual on
> the housing unit, asking him to give them to the inmate
> with whom he was to have no contact.

*Id*. While no prison rules were broken, Jordan "did violate the conditions for enrollment [in the SOTP] by continued involvement in inappropriate conduct." *Id*.

In his appeal to the Superintendent, Jordan asserted that Ms. Burkholder retaliated against him for the exercise of his First Amendment rights of free speech and association. *Id*., CM/ECF p. 29. In denying the grievance appeal, Superintendent Tennis noted that:

> Corrections officers on the SOP have witnessed you
> talking, walking, and standing with this inmate. Officers
> in the yard have observed you with this inmate in the
> yard. Ms. Burkholder and Mr. Regan report you also
> admitted to this contact in both peer group and core
> group. You also reportedly admitted to giving cosmetics
> to another inmate to pass along to the inmate with whom
> you are to not have any contact.

*Id*. He found Jordan's removal from the SOTP appropriate. *Id*. Dorina Varner denied the grievance at final review. *Id.*, CM/ECF p. 25.

Jordan avers that Ms. Burkholder violated his First Amendment rights of association and speech when she removed him from the SOTP program for his relationship with another inmate. Doc. 25, CM/ECF p. 3. He also alleges that she violated his Due Process rights by arbitrarily removing him from the SOTP program by way of a "vote sheet" which did not afford him the same procedures afforded inmates who seek to challenge a misconduct sanction. *Id*., CM/ECF p. 4. Next, Jordan claims that all of the Defendants (except for CO Phillips) violated his Due Process rights by failing to "correct, discipline, investigate and enforce" DOC policies and procedures when they had the opportunity to address these issues as reported through his various grievances. *Id*., CM/ECF p. 6. Finally, Plaintiff claims that section 9718.1 vests him with a liberty interest in being parole eligible. *Id*. He claims that all of the Defendants (except for CO Phillips)[4] denied him this liberty interest by removing him from the SOTP based on false and malicious statements by staff and inmates. *Id*., CM/ECF pp. 6-7.

IV.  *Discussion*

   A.  *Procedural Due Process Claim*

Jordan argues that he has a liberty interest in participating in the SOTP as it is a prerequisite, pursuant to section 9718.1, for his parole eligibility and

---

[4] CO Phillips "is not involved in any violations relating to this civil action." *Id.*

thus he is entitled to due process prior to being removed from the program. He alleges he was deprived of due process in the way Ms. Burkholder decided to remove him, by way of a vote sheet and without the use of procedures employed in disciplinary proceedings.

In considering a procedural due process claim, courts must first determine if the plaintiff's interest is a liberty or property interest within the meaning of the Fourteenth Amendment. *Evans v. Sec'y PA Dep't Corr.*, 645 F.3d 650, 663 (3d Cir. 2011). Here, Plaintiff asserts he has a liberty interest in participating in the SOTP arising from the statutory requirement that he complete the SOTP as a condition of being eligible for parole.

At least one court would probably agree that this statutory requirement creates a liberty interest. *See Beebe v. Heil*, 333 F. Supp. 2d 1011, 1016-17 (D. Colo. 2004). However, the issue is far from clear, *see Perry v. Pa. Dept. of Corr.*, 441 F. App'x 833, 837 n.5 (3d Cir. 2011)(nonprecedential)("any liberty interest [section 9718.1] might convey would be quite narrow, limited to the right to pursue such treatment if it is indeed required for parole"), and there are strong indications from Plaintiff's 2254 litigation that Plaintiff cannot advance this claim for the simple reason that section 9718.1 does not apply to Plaintiff because his offenses occurred before the effective date of the provision, December 20, 2000. *See Evans v. Pa. Bd. of Prob. & Parole*, 820 A.2d 904, 908 (Pa. Commw. Ct. 2003)(section 9718.1 applies only to offenses occurring after its effective date); *Porter v. Grace*, No. 05-CV-681, 2006 WL 680820, at *2 n.2 (M.D. Pa. Mar. 13, 2006)(Caldwell, J.)(same,

citing *Evans*). The difficulty is that Defendants have filed a motion to dismiss and there is nothing in the Amended Complaint or in the documents attached that allow us to conclude that Plaintiff's offenses occurred before the section's effective date.[5] We must therefore deny the motion to dismiss the procedural due process claim.

However, the dockets for Plaintiff's state-court criminal proceedings would establish the date of the offenses, and the dockets are public records we could rely on in deciding a motion to dismiss. Thus since it appears obvious that section 9718.1 does not apply to Plaintiff, and it could easily be shown by public records, we will grant Defendants leave to file another motion to dismiss the procedural due process claim, this time properly supported. In the meantime, the current motion to dismiss the procedural due process claim will be denied and because any discovery should await whether the case will proceed, our stay of discovery will remain in place.

B. *Substantive Due Process Claim*

Plaintiff has also claimed that his removal from the program violated substantive due process. A substantive due process claim based upon alleged arbitrary and capricious action is not easily mounted because the level of

---

[5] As we noted above, the filings in Plaintiff's 2254 proceedings in the Eastern District of Pennsylvania contain factual allegations that would indicate that the offenses occurred before December 20, 2000. But on a motion to dismiss we cannot rely on these allegations from separate litigation. *See M&M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) (nonprecedential)(on a motion to dismiss a court may take judicial notice of the existence of a prior judicial opinion, but not of the truth of the facts asserted in the opinion); *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004)(judicial admissions are binding in the case in which they are made).

arbitrariness required involves not merely action that is unreasonable, but rather, something more egregious, at times "conscience shocking." *Hunterson v. DiSabato*, 308 F.3d 236, 246-47 (3d Cir. 2002). Jordan was removed from the SOTP after receiving repeated warnings of the inappropriateness of his relationship with another inmate. This is not "conscience shocking," and the substantive due process claim will be dismissed.

    C. *Retaliation Claim for the Exercise of First Amendment Free-Speech and Associational Rights*

Jordan asserts that Ms. Burkholder wrongly retaliated against him by removing him from the SOTP due to the exercise of his First Amendment right to speak to, and associate with, another inmate.

"Retaliation for constitutionally-protected activity is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d 103, 112–13 (3d Cir. 1990). To prevail on a retaliation claim, the prisoner must prove: (1) he engaged in constitutionally protected activity; (2) he suffered "some adverse action" by a state actor; and (3) "a causal link between the exercise of [the] constitutional right[ ] and the adverse action taken." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Once a prisoner establishes a prima facie case, the burden shifts to the defendant to show by a preponderance of the evidence that the same disciplinary action would have been taken even in the absence of protected activity. *Rauser*, 241 F.3d at 334.

Prison regulations that infringe a prisoner's constitutional right are valid so long as they are "reasonably related to legitimate penological interests." *Turner*

*v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).  Deterrence of crime, rehabilitation, and internal security within correctional facilities are "legitimate penal objectives."  *Pell v. Procunier*, 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

The Supreme Court has identified four factors to consider when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns."  *Turner*, 482 U.S. at 89-90, 107 S.Ct. at 2261.

Jordan's retaliation claim is based on treatment staff's response to his claimed right under the First Amendment to  associate with another inmate while participating in the SOTP and his right to speak with that inmate.  We assume for the sake of argument such constitutional rights exist for an inmate.[6]  Plaintiff has failed to allege that he was retaliated against for the exercise of those rights.

---

[6] Imprisonment does not automatically deprive a prisoner of his First Amendment rights. *Beard v. Banks*, 548 U.S. 521, 528, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006); *Sharp v. Johnson*, __ F.3d __, __, 2012 WL 400667, at *9 (3d Cir. 2012).  However, "freedom of association is among the rights least compatible with incarceration."  *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162, 2167, 156 L.Ed.2d 162 (2003).  Accordingly, "[s]ome curtailment of that freedom must be expected in the prison context."  *Id*.  Courts owe "substantial deference to the professional judgment of prison administrators."  *Id*., at 132, 123 S.Ct. at 2167.

Based on the Amended Complaint and the documents attached to it, it is clear that Jordan was aware that one of the goals of the program was to help him "[i]dentify his offense cycle and interrupt the cycle when high-risk behaviors begin" and that what he did or said while in the program, would be scrutinized by treatment staff as well as other inmates. Doc. 25-2, CM/ECF pp. 37-38. He was advised that by engaging in inappropriate behavior he was not only hindering his own program advancement but was also "interfering with every member's therapeutic goals." *Id*. He was aware that prison staff believed his association with this other inmate was contrary to his therapeutic advancement in the SOTP. Once removed from the program for this reason, he was also aware that his choice to associate with this particular inmate, or engaging in similar activity, would result in his dismissal from the program, if readmitted.

The DOC is vested with "the sole discretion with respect to counseling or therapy program contents and administration." 42 Pa. Con. Stat. Ann. 9718.1(c). Part of that administration is ensuring all participants adhere to the treatment goals of the program to facilitate their own benefit from the program as well as avoiding interfering with the rehabilitation efforts of others. Therefore, it cannot be said that Jordan's removal from the SOTP was an "exaggerated response," as his alleged right of association and free speech in this context was limited only to the extent necessary to prevent interference with not only his own treatment progress, but that of the entire SOTP community.

It follows that Plaintiff has failed to state a retaliation claim for the exercise of his First Amendment right of association since he has failed to show a

causal link between the adverse action and the exercise of his constitutional right, for the action of prison officials in removing Jordan from the SOTP after staff and inmates reported his continued fraternization and gift of cosmetics to the other inmate was action taken to advance a legitimate penological interest. Jordan's retaliation claim will be dismissed.

    D. *Dismissal of CO Phillips*

CO Phillips is mentioned in Count 7 of the Amended Complaint as having responded to an inquiry from Ms. Burkholder regarding Jordan. *See* Doc. 25 at CM/ECF p. 7. He is not identified as a defendant by Plaintiff, but rather as a witness. Jordan expressly states that it is not his intent to name CO Phillips as a defendant: "Correction Officer Phillips, is not involved in any violations relating to this civil action." *Id*. Based on Jordan's expressed exclusion of this individual as a defendant, as well as the lack of any allegations that he was involved in the alleged misconduct, CO Phillips will be dismissed from this action. *See* Fed. R. Civ. P. 41(a)(1)(A)(I) and *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

    E. *Lack of Personal Involvement of Beard, Tennis, Marsh,*
       *Thompson, Smith and Varner*

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003). A "defendant in

a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode,* 845 F.2d at 1207). Individual liability can only be imposed if the state actor played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton* , 805 F.2d 126, 133 (3d Cir. 1986). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207). Alternatively, a supervisor may also be held liable under § 1983 if it is shown that he or she "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Thus, supervisor liability may be imposed under Section 1983 only if "the connection between the supervisor's directions and the constitutional deprivation [is] sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010). Additionally, the absence of an underlying constitutional violation precludes any supervisory liability on a "knowledge or acquiescence" or "failure to train" theory. *Crawford v. Lappin*, 446 F. App'x 413, 416 (3d Cir. 2011)(nonprecedential); *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011).

Turning to Jordan's claims against Defendants Tennis, Marsh, Thompson, Smith and Varner, these individuals were involved in the processing of one or more of his grievances. Liability against a defendant based strictly on their

role in an after-the-fact review of a grievance or appeal is not enough to establish personal involvement. *See Rode,* 845 F.2d at 1208. However, Jordan seeks to assert personal liability against these individuals on the basis of their knowledge of and acquiescence in Ms. Burkholder and Mr. Gentzel's alleged wrongdoings. However, as we have found, Jordan has failed to state an underlying violation of his constitutional rights under the First Amendment or the Due Process Clause, thus he cannot assert liability against this group of defendants on the theory of supervisory liability. *See Argueta,* 643 F.3d at 72.

F. *Motion to Compel Discovery*

After the filing of his original Complaint, the defendants sought a stay of discovery pending the resolution of their motion to dismiss. By order of June 16, 2010, we granted a stay. On June 28, 2010, Jordan sought leave to file an amended complaint. Given Jordan's right to file an amended complaint, the defendants' original motion to dismiss was denied as moot. *Id*. Defendants filed a Motion to Dismiss the Amended Complaint shortly thereafter.

On February 3, 2012, Jordan filed a Motion to Compel discovery (doc. 34), noting that the defendants had not responded to his discovery even though their first motion to dismiss was resolved by being denied as moot. The court will deny Jordan's motion to compel as the reasons for granting the defendants' motion to stay pending the resolution of their first motion to dismiss are still valid as we have decided to grant Defendants leave to file another motion to dismiss the procedural due process claim. The stay of discovery shall remain in effect.

-17-

G.  *Leave to Amend*

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).  In this instance, based on the overwhelming amount of documentary information Jordan attached to his Amended Complaint, any amendment as to his substantive due process or retaliation claims would be futile.  Accordingly, no leave to amend will be granted.

We will issue an appropriate order.

 /s/ William W. Caldwell  
William W. Caldwell  
United States District Judge

Date: March 12, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN JORDAN, :
    Plaintiff :
 :
 : CIVIL NO. 1:09-CV-2394
v. :
 : (Judge Caldwell)
JEFFREY A. BEARD, *et al.*, :
    Defendants :

*O R D E R*

    AND NOW, this 12th day of March, 2012, in accordance with the accompanying memorandum of law, it is ordered that:

    1. Defendants' Motion to Dismiss the Amended Complaint (Doc. 30) is granted in part and denied in part.

    2. Plaintiff's substantive due process and retaliation claims are hereby dismissed.

    3. Defendants are granted twenty-one (21) days from the date of this order to file another motion to dismiss the procedural due process claim.

    4. Defendants C.O. Phillips, Tennis, Marsh, Thompson, Smith and Varner are dismissed from this action.

    5. Plaintiff's Motion to Dismiss the Defendants' Motion to Dismiss (Doc. 32) is denied.

    6. Plaintiff's Motion to Compel (Doc. 34) is denied.

    7. Defendants' motion (Doc. 36) to stay discovery is granted, and discovery is stayed pending resolution of the procedural due process claim.

                                    /s/ William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge